IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TIMOTHY ARMSTRONG,

    Petitioner,

v.                                                                                                                No. 1:18-cv-01098-JDB-jay

RUSTY WASHBURN, Warden,

    Respondent.

ORDER DIRECTING CLERK TO TERMINATE MOTION,
GRANTING MOTION TO DISMISS,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Timothy Armstrong, has filed a pro se habeas corpus petition (the "Petition") pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 1.) Respondent, Rusty Washburn, has moved to dismiss the Petition as untimely. (D.E. 16.) For the following reasons, the motion is GRANTED and the Petition is DISMISSED.

BACKGROUND

In February 1994, the Dyer County, Tennessee, grand jury charged Armstrong with pre-meditated murder, felony murder, and especially aggravated robbery. (D.E. 15-6 at PageID 137.) According to the presentence report (the "PSR"), Petitioner used his "fists, a skillet, and knife" to rob and kill his roommate, Theresa Patterson, on December 10, 1993. (D.E. 15-19 at PageID 288.) On the day following the offenses, "Armstrong gave a taped statement to investigator Joe McDowell indicating that he had killed Theresa Patterson during the commission of a robbery wherein [he] stole $240.00, that he later used to purchase crack cocaine." (*Id.*) On May 16, 1994,

he pleaded guilty to felony murder and especially aggravated robbery.[1] (*Id.*) On July 1, 1994, the trial court sentenced him to life in prison for the murder and twenty-two years concurrent for the especially aggravated robbery. (D.E. 15-1 at PageID 86-87.) Judgment was entered the same day (*id.*) and no direct appeal was taken.

Beginning in August 2013, over nineteen years after his conviction, Petitioner initiated and litigated state court collateral challenges to his convictions. He first filed a petition for post-conviction relief, alleging, among other things, that counsel was ineffective for failing to ensure that he received a hearing before he confessed, and that "before, during, and after the murder," he suffered from "mental illness" and "mental retard[ation]." (*Id.* at PageID 96-97.) He described his mental illness as "being a psychiatric disorder, alcohol dependence and [cocaine] dependence." (*Id.*) The trial court denied the petition as untimely. (*Id.* at PageID 101-03). The inmate filed an application for an interlocutory appeal or an extraordinary appeal in the Tennessee Court of Criminal Appeals. (*Id.* at PageID 71-74.) In an order dated October 4, 2013, the appellate court denied the motion because the trial court's order was a final judgment which was appealable as a matter of right. (D.E. 15-3 at PageID 109.) On October 21, 2013, Petitioner filed in the Tennessee Court of Criminal Appeals a motion to withdraw his guilty plea and for a judgment of acquittal (D.E. 15-4 at PageID 111-19), which was denied for lack of appellate jurisdiction (D.E. 15-5 at PageID 120).

In February 2016, the inmate filed a petition for writ of habeas corpus in the Hardeman County, Tennessee, Circuit Court challenging the legality of the indictment. (D.E. 15-6 at PageID

---

[1] At the time of Armstrong's crimes, felony murder was defined as the unlawful, "reckless killing of another committed in the perpetration of, or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping or aircraft piracy." Tenn. Code Ann. § 39-13-201(a) (1991).

121-24.) The trial court denied the petition on the ground that Armstrong had not demonstrated, as state law required, that the judgment of conviction was void or that the sentence had expired. (*Id.* at PageID 141-42.) Petitioner appealed. (*Id.* at PageID 143-44.) He later filed a motion for voluntary dismissal of the appeal (D.E. 15-7), which was granted (D.E. 15-8).

The movant filed a second state court petition for habeas corpus relief in April 2016, asserting a double jeopardy violation and ineffective assistance of counsel. (D.E. 15-11 at PageID 157-61.) The trial court denied the petition because it did not assert "a lack of jurisdiction for the order of confinement or that [Armstrong] [was] otherwise entitled to immediate release because of the expiration of his sentence." (*Id.* at PageID 179.) The inmate appealed, and the Tennessee Court of Criminal Appeals affirmed. *See Armstrong v. Ford*, No. W2016-00891-CCA-R3-HC, 2017 WL 838667, at *1 (Tenn. Crim. App. Mar. 3, 2017). Petitioner did not file an application for permission to appeal to the Tennessee Supreme Court.

In March 2017, he filed a motion in the Tennessee Court of Criminal Appeals to reopen his first habeas corpus appeal, which he had previously voluntarily dismissed. (D.E. 15-9 at PageID 147.) The appellate court denied the motion, finding that "[t]he rules of this Court do not permit the Petitioner to proceed in this manner." (D.E. 15-10 at PageID 150.)

In October 2017, Armstrong filed in the Tennessee Court of Criminal Appeals a motion to waive the requirement to file a timely notice of appeal relative to his 2013 post-conviction petition. (D.E. 15-17 at PageID 236-39.) He argued that he failed to file his notice of appeal because of "mental incompetence." (*Id.* at PageID 237-39.) The appellate court denied the motion, concluding that the Petitioner's failure to offer any "evidence relating to any mental incompetence, coupled with the extreme delay in seeking relief at the trial and appellate level, le[ft] . . . th[e] Court unable to find that the interests of justice would require the granting of a late notice of appeal." (D.E. 15-18 at PageID 271.) On January 3, 2018, the inmate filed an application with

the Tennessee Supreme Court for discretionary review, again arguing that he was entitled to a late appeal because mental incompetence precluded him from filing a timely notice of appeal. (D.E. 15-19 at PageID 280.) On March 16, 2018, the Tennessee Supreme Court summarily denied the application. (D.E. 15-21.)

DISCUSSION

Armstrong filed the Petition in this Court on June 4, 2018, asserting that "he is/was incompetent and the state-court violated his due process rights by failing to hold a competency hearing before hearing his guilty plea to first degree [m]urder."[2] (D.E. 1 at PageID 16.) On April 23, 2019, Respondent moved to dismiss the Petition as untimely. (D.E. 16.) Armstrong filed, on July 10, 2019, a document styled "Motion for Equitable Tolling In Response to Respondent's Motion to Dismiss" asserting that he is entitled to equitable tolling of the limitations period.[3] (D.E. 19.)

A § 2254 petition is subject to a one-year limitations period, commencing from four possible dates:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[2]The Petition was filed on the Court's official § 2254 form. Where the form asked for a statement of the ground for relief, Petitioner wrote: "[T]he trial court, post conviction court, and defense counsel were presented with objective facts that were sufficient to raise a bona[]fide doubt as to Petitioner's competency." (D.E. 1 at PageID 5.) The claim is not accompanied by a statement of supporting facts as required by the § 2254 form and by Habeas Rule 2. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(2). Instead, in the space provided for supporting facts, the inmate simply restated the claim. (*See* D.E. 1 at PageID 5.) Nevertheless, the Court liberally construes the Petition as asserting that Armstrong was incompetent to plead guilty, as articulated in the first sentence of the "Timeliness of Petition" section of the form. (*See id.* at PageID 16.)

[3]Armstrong's motion for equitable tolling is in the nature of a reply to the motion to dismiss. The Clerk is therefore DIRECTED to terminate the motion at D.E. 19. The Court addresses the inmate's equitable tolling arguments herein.

4

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The one-year limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review . . . is pending[.]" 28 U.S.C. § 2244(d)(2). The time bar is also subject to equitable tolling where the petitioner demonstrates "that he has been pursuing his rights diligently[] and . . . that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The party seeking equitable tolling bears the burden of establishing the elements of diligence and extraordinary circumstance. *Pace,* 544 U.S. at 418. In determining whether the burden has been met, a court must be mindful of the Sixth Circuit's "repeated[] caution[] that equitable tolling should be granted 'sparingly.'" *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) (quoting *Solomon v. United States,* 467 F.3d 928, 933 (6th Cir. 2006)).

The limitations period may also be "overcome" through a "gateway" claim of actual innocence. *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013). A valid claim of actual innocence requires a petitioner to "show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. The United States Supreme Court has cautioned that the actual innocence exception should "remain rare" and "only be applied in the extraordinary case." *Id.* at 321 (internal quotation marks omitted).

In this matter, § 2244(d)(1)(A) applies, which means that the running of the federal limitations period was triggered when Petitioner's convictions became final. Because Armstrong did not take a direct appeal, his judgments of conviction became final on August 1, 1994, when the time to take a direct appeal expired. *See Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 608 (6th Cir. 2013) (a petitioner's conviction becomes final when the time for a direct appeal expires); Tenn. R. App. P. 4(a) ("In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal . . . shall be filed with the clerk of the appellate court within 30 days of entry of the judgment appealed from[.]"); Tenn. R. App. P. 21(a) (if the last day for filing a document falls on a Saturday, Sunday, or legal holiday, the day should not be counted). Because the convictions were final prior to April 24, 1996, the enactment date of the Anti-terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, *et seq.*("AEDPA"), Petitioner had one year from that date—until April 24, 1997—to seek federal habeas relief. *See Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002).

The inmate did not file the Petition until June 4, 2018—more than twenty-one years after the limitations period expired.[4] He concedes that fact but argues he is entitled to equitable tolling of the limitations period "due to [his] mental deficiencies." (D.E. 1 at PageID 16.) Specifically,

---

[4]The federal limitations period was not tolled during the pendency of Petitioner's state court post-conviction proceedings, as it expired long before those cases were initiated. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)) (the federal statutory tolling provision, 28 U.S.C. § 2244(d)(2), "does not . . . 'revive' the limitations period . . . , [but] can only serve to pause a clock that has not yet fully run").

6

he asserts that, due to mental illness and intellectual disability,[5] he could not file the Petition within the federal limitations period and that he is entitled to an evidentiary hearing and appointment of counsel to prove his allegations.

In an effort to demonstrate his alleged impairments and their causal connection to his untimely filing of the Petition, Armstrong relies on the application for discretionary review that he submitted to the Tennessee Supreme Court following the appellate court's denial of his request to file an untimely post-conviction appeal. In the application, he argued, among other things, that the trial judge's capital case report[6] "indicate[ed] that [his] IQ . . . is[] 'unknown.'" (D.E. 15-19 at PageID 278.) He also insisted that the PSR "establish[ed] that [he] suffers from severe mental illness." (*Id.* at PageID 277.)

Regarding the latter assertion, he pointed out that the PSR reflects that he suffers from post-traumatic stress disorder ("PTSD").[7] (*Id.*) The report also documented that he was evaluated at the Northwest Counseling Center on March 3, 1994, which was three months after he committed the crimes. His "diagnosis[] at th[e] time" of the evaluation "was polysubstance abuse, adjustment

---

[5]Although the parties use the term "mental retardation," the Court will use the phrase "intellectual disability." *See Frazier v. Jenkins*, 770 F.3d 485, 490 n.1 (6th Cir. 2014) (citing *Hall v. Fla.,* 572 U.S. 701, 704 (2014)).

[6]Tennessee Supreme Court Rule 12 provides that, "in all cases . . . in which the defendant is convicted of first-degree murder," a report shall issue from the trial judge regarding the circumstances of the case. Tenn. S. Ct. R. 12. The trial court is responsible for the compilation of "all information required by [the] rule; to certify the accuracy of the report as to those matters within the trial court's knowledge; and to transmit the report forthwith to the Clerk of the Supreme Court[.]" *Id.*

[7]The copy of the PSR submitted by Petitioner contains two pages notated as "Page: 6." (*See* D.E. 15-19 at PageID 285, 292.) Both pages record his then-current mental state as "fair," and his "mental health problems" as "post traumatic stress disorder." (*Id.*) However, the second "Page 6" notes that those conclusions were self-reported by Armstrong, while the first "Page 6" does not attribute those conclusions to any source. (*Id.*)

disorder with mixed emotional features and brief reactive psychosis."[8] (*Id.* at PageID 285.) The psychiatric evaluation reported that Armstrong "complained of poor sleep [and] hearing voices," but determined that the latter did not "appear psychotic in nature." (*Id.*) Petitioner was determined to be "cognitively clear" and it was observed that he "communicate[d] effectively." (*Id.*) At the time, he was "prescribed Mellaril by the psychiatrist." (*Id.*)

The PSR further "verified" that, seven months prior to the crimes, Armstrong was admitted to

> the University Medical Center on May 6-8, 1993, in the emergency room for suicidal and homicidal ideations. The record[] also[] noted the Defendant admitted use of crack cocaine, but no other drugs. The Defendant was reported to want drugs/to die. He was then referred to "MHCJ." [He] was admitted to Gateway 5-6-93 for detoxification. He was released on 5-10-93, against medical advi[c]e.

(*Id.*)

Under a subsection of the PSR titled "Defendant's Version," it was noted that, after being "advised that he should discuss giving a statement for the purpose of this report with his attorney," Petitioner "did seek the advi[c]e of [counsel] and prepared a handwritten statement" of the events on the day of the crimes. (*Id.* at PageID 288.) The statement provided as follows:

> I . . . was on crack cocaine all that day. I wasn't in my right state of mind. I couldn't [have] done what I did if it wasn't for the drugs. I never even been a violent person in my whole entire life. I have suffered terribaly (sic) over what I have done. It's hard to believe I could [have] done what I did. It all seems like a really bad dream that will haunt me the rest of my life.

(*Id.* at PageID 288-89.) Petitioner also "self-report[ed]" that his "past drug use" included "crack cocaine, Dilaudid, Morphine, Valium." (*Id.* at PageID 293.) He stated that he "mainly . . . turned to drugs" because he "felt unloved" when he was growing up and that "nobody wanted or cared for" him. (*Id.* at PageID 294.) He portrayed himself as "a very depressed person." (*Id.*) His

---

[8]Quotations from the PSR are altered to eliminate irregular capitalization.

brother described him as having "two different personalities," as he "was good sometimes and at other times he could stab you in the back[.]" (*Id.* at PageID 295.)

The Sixth Circuit has held that "a petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." *Ata v. Scutt,* 662 F.3d 736, 742 (6th Cir. 2011). A petitioner seeking equitable tolling for mental incompetence bears the burden of demonstrating "that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Id.* "In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required." *Id.* (citing *McSwain,* 287 F. App'x at 456). "[A]n evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file." *Id.* (citing *McSwain,* 287 F. App'x at 457-58); *Hunter v. Ferrell,* 587 F.3d 1304, 1309-10 (11th Cir. 2009) (per curiam)). In assessing the need for a hearing, a district court must "determine if the factual allegations are sufficient to support equitable tolling and [must] review the state court record in order to establish whether petitioner's assertions are refuted by the record or otherwise without merit." *Id.*

Respondent argues there is no support for Petitioner's allegation that he suffers from an intellectual disability. He further posits that the state court record refutes Armstrong's assertion that mental illness during and following the limitations period precluded him from filing the Petition sooner. In his reply brief, the inmate insists that "he has no understanding of how the law works [and] has been deemed to be of lower than average intelligence, to the point of being retarded[.]" (D.E. 19 at PageID 365.) He submits that he "has some problems with being able to read and understand what he reads to the point that [the prison authorities] procure[d] a machine

9

and tapes for [him] to hear." (*Id.* at PageID 366.) He also complains that he "is at the mercy of overworked legal aides, who are not legal professionals." (*Id.* at PageID 364-65.)

The Court agrees with Washburn that Petitioner has not presented specific factual allegations or evidentiary support for his allegation that he suffers from an intellectual disability. Although his use of audio equipment suggests that he may have, as he asserts, "some problems" with reading, such a difficulty is not, by itself, a sufficient indication of an intellectual disability. What is more, the capital case report does not substantiate his allegation that he has an intellectual disability, as it only states that his I.Q. is "not known."[9]

Armstrong also has not presented specific factual allegations or evidence to support his assertion that mental illness precluded him from filing the Petition before the expiration of the limitations period on April 24, 1997. The fact that, in mid-1993, he was admitted to a hospital emergency room for suicidal and homicidal ideation and received four days of detoxification treatment does not suggest that he suffered from mental illness so severe that it stood in the way of filing the Petition through the end of the expiration period *four years* later. And, to the extent he was diagnosed with mental illness three months after the crimes, the same psychiatric evaluation reported that he was "cognitively clear" and "communicate[d] effectively."[10] The movant, thus, has failed to show that mental illness prevented a timely filing.

But even if the Court were to assume that Armstrong's mental illness and alleged intellectual disability were severe enough to render him incapable of filing the Petition during the

---

[9]Armstrong states in his reply brief that he "is currently trying to get the records from [prison authorities] to support [his] allegation[]" that he has an intellectual disability. (D.E. 19 at PageID 367.) He indicates that he "will get these records and forward them to both the court[] and the respondent." (*Id.*) He has not, however, submitted any such evidence in the more than six months since he filed the brief.

[10]Notably absent from Petitioner's submissions are allegations or evidence that he has received treatment for severe psychiatric problems while in prison.

10

limitations period, the state court record shows he was able to overcome those impediments by 2013. As previously discussed, Petitioner litigated a series of state collateral proceedings from August 2013 until 2018. It is, therefore, undisputed that he was able, with or without the assistance of prison library aides, to pursue legal remedies during the five years leading up to the filing of the Petition in June 2018.[11] His failure to file the Petition until 2018 demonstrates that he did not diligently pursue his federal rights. *See Pace*, 544 U.S. at 418 (petitioner was not entitled to equitable tolling because, among other things, he sat on his federal rights for five months after the alleged extraordinary circumstance was removed); *Solomon*, 467 F.3d at 933-34 (6th Cir. 2006) (petitioner, whose transfer to a different prison without his legal papers was an extraordinary circumstance, exercised reasonable diligence after he was returned to his original prison by filing his petition within one month of that event). Equitable tolling is therefore not warranted in this case.[12] *See McSwain*, 287 F. App'x at 457 (prisoner was not entitled to equitable tolling where "the record evidence indicate[d] [she] was able to pursue both direct and collateral challenges to her conviction in the state courts notwithstanding her mental illness.").[13]

---

[11]To the extent Petitioner complains that the prison legal aides are not "legal professionals," that circumstance is common to most prisoners and is not a basis for equitable tolling.

[12]An evidentiary hearing on equitable tolling is not necessary in light of the state court record.

[13]Armstrong does not argue that he has overcome the statute of limitations through newly discovered evidence that he is actually innocent of the crimes. But even if he had, he admits (*see* D.E. 15-19 at PageID 289) that he stole the victim's money and killed her. *See Bousley v. United States,* 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley,* 505 U.S. 333, 339 (1992)) (a petitioner must establish his "factual innocence, not mere legal insufficiency"). Even so, Armstrong's brief hospitalization and detoxification seven months before the crimes, together with the results of his post-arrest psychiatric evaluation, are not compelling evidence that he did not have the *mens rea* in December 1993 for the especially aggravated robbery and the felony murder—the latter of which did not require premeditation, but only recklessness. *See State v. Whitmore*, No. 03C01-9404-CR-00141, 1997 WL 334904, at *6 (Tenn. Crim. App. June 19, 1997) (citing Tenn. Code Ann. §§ 39-13-201(a) and -202(a)(2) (1991)). In addition, the information about those events is not new, as they were known to the inmate at the times they occurred and at the time of his May 1994 guilty plea. At bottom, Petitioner has not offered "new reliable evidence"

Because Petitioner sought federal habeas relief well beyond the time allowed by the relevant statute and has not shown entitlement to equitable tolling, the motion to dismiss is GRANTED. The Petition is hereby DISMISSED.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would

---

that is "so strong that a court cannot have confidence in the outcome" of his criminal proceedings. *Schlup*, 513 U.S. at 316.

12

not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[14]

IT IS SO ORDERED this 22nd day of January 2020.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[14] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.